[No. S030711. Nov. 18, 1993.]

BARBIE HUGGINS et al., Plaintiffs and Appellants, v.
LONGS DRUG STORES CALIFORNIA, INC., Defendant and
Respondent.

**COUNSEL**

John J. Machado and Patricia Melugin Cousins for Plaintiffs and Appellants.

Dummit, Faber & Brown, Gregory P. Matzen, Donahue & Callaham and Stephen J. Mackey for Defendant and Respondent.

Thelen, Marrin, Johnson & Bridges, Curtis A. Cole, Steven J. Bernheim, Dicaro, Highman, D'Antony, Dillard, Fuller & Gregor, Kimberly Brown and Brian S. Letofsky as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**BAXTER, J.**—In filling a prescription for plaintiffs' two-month-old son, defendant pharmacy wrote directions for five times the dosage ordered by the doctor. Plaintiffs seek to hold the pharmacy liable for their emotional distress from having unwittingly injured their son by administration of the overdose. As is typical in suits for negligent infliction of emotional distress involving family relationships and medical treatment (see *Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064, 1071 [9 Cal.Rptr.2d 615, 831 P.2d 1197] [hereafter *Burgess*]), plaintiffs initially urged both a "bystander" theory and a "direct victim" theory.

The Court of Appeal rejected "bystander" recovery, but held that plaintiffs could state a claim as "direct victims" based on a limited duty of care owed by the pharmacist to persons other than the patient for whom the prescription is filled. That duty arises, according to the Court of Appeal, when the pharmacist knows or should know that the patient is an infant or other person incapable of taking the medication without assistance, and that the medication is to be administered, or its administration supervised, by a parent or other closely related caregiver. The supposed duty is violated if the pharmacist's negligence in filling the prescription, coupled with the parent's or caregiver's administration of the medication pursuant to the pharmacist's instructions, results in serious injury to the patient, and the parent or caregiver suffers emotional distress on learning that his or her own act

directly caused the patient's injury. The parent or caregiver is thereby deemed entitled to damages as a "direct victim" of the pharmacist's negligence.

We disagree, and reverse the judgment of the Court of Appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Barbie Huggins and Robert Huggins (plaintiffs) filed a complaint against Longs Drug Stores California, Inc. (defendant) and its agents (named as Doe defendants) containing the following allegations in all four of its causes of action: Plaintiffs are the parents of Kodee Huggins (Kodee), born August 14, 1989. On October 9, 1989, plaintiffs asked defendant's pharmacist to fill a prescription for a medication, Ceclor, to be given to Kodee in stated amounts. In filling the prescription, the pharmacist misstated the treating physician's directions, thereby causing a severe overdosage and consequent injury to the minor, and further causing plaintiffs to suffer emotional distress and consequent damages.[1]

The first cause of action of the complaint is for negligence, and the second cause of action asserts a claim (which plaintiffs have not pursued and therefore waive) for intentional infliction of emotional distress. A third cause of action appears to be based on a "direct victim" theory of negligently caused emotional distress. It alleges that the pharmacist's conduct breached defendant's duties arising out of "the customer/pharmacist/pharmacy and other similar relationship between plaintiffs and defendants." The fourth and final cause of action seeks recovery for negligently caused emotional distress on a "bystander" theory, alleging that plaintiffs suffered emotional distress from observing Kodee's crying and distress during and after administration of the erroneous overdose.

Based on the complaint and deposition testimony, defendant moved for summary judgment or summary adjudication of issues, seeking a ruling that plaintiffs have failed to establish the elements of a cause of action for negligent infliction of emotional distress. The following facts, which appear in the exhibits to the motion and to plaintiffs' opposition, are essentially undisputed:

On October 9, 1989, a doctor who was treating Kodee for an ear infection issued a prescription for Ceclor, to be administered every eight hours in doses of "2.5 cc's," which is equivalent to one-half teaspoon. Mrs. Huggins

---

[1]Barbie Huggins also sued as guardian ad litem for Kodee. Kodee's claim has been resolved by judicial arbitration and is not in issue here.

immediately had the prescription filled at defendant's pharmacy, which wrote directions for administering the medication which called for doses of two and a half teaspoons, five times the amount prescribed by the doctor. Mrs. Huggins then took Kodee home and began giving him the medicine that evening, as directed by the pharmacist. She was unsure whether she, her husband, or the day-care provider gave Kodee the next dose the following morning. Robert Huggins saw his wife administer the medication but was unsure whether he also gave Kodee any of the prescribed dosages.

That afternoon, when Mrs. Huggins picked Kodee up from day care, she noticed that he was lethargic and unresponsive. Though she suspected that this condition was caused by the medication, she was only moderately worried. In the late afternoon or early evening, she received a call from her mother reporting that another pharmacy, to which the prescription had been transferred, had discovered the mistake in the dosage. Mrs. Huggins thereupon became shocked, grieved, worried, and emotionally distressed. Robert Huggins became similarly distressed after being summoned home from work and told of the mistake.

In opposing defendant's motion, plaintiffs asserted that they had established the elements of a cause of action for negligent infliction of emotional distress and, in the alternative, requested leave to amend their complaint to supply any missing element. They specifically offered to add an allegation that they themselves administered the overdose, as instructed by defendant, and were injured by the realization that they had done so. Defendant replied that such an amendment would not enable the alleged cause of action to survive summary adjudication.

Without ruling on plaintiffs' request for leave to amend the complaint, the trial court ordered summary judgment for defendant on the grounds that (1) plaintiffs could not recover as bystanders to Kodee's injury, for lack of a contemporaneous connection between the negligent act and their emotional distress, and (2) plaintiffs could not recover as direct victims because defendant's duty of care was owed only to the child.

On plaintiffs' appeal, the Court of Appeal upheld the trial court's rejection of plaintiffs' "bystander" claim for emotional distress resulting from their observation of the injury to Kodee from the overdose, but reversed the trial court's rejection of plaintiffs' claim to recovery as "direct victims." The court theorized that when a pharmacist knows, or should know, that a prescription is for an infant or other helpless patient, the pharmacist's duty of care extends not only to the patient but also to the patient's parent or other closely related caregiver who in fact administers the medication as prescribed. Recovery for violation of that duty, however, was restricted by the

court's opinion to cases in which administration of the medication causes death or serious injury to the patient.[2]

Since plaintiffs have not sought review of the rejection of their "bystander" theory, we need only determine their right to recover as "direct victims" of defendant's negligent conduct.[3]

## DISCUSSION

■ Negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply. The existence of a duty is a question of law. (*Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588 [257 Cal.Rptr. 98, 770 P.2d 278] [hereafter *Marlene F.*].) "The distinction between the 'bystander' and the 'direct victim' cases is found in the source of the duty owed by the defendant to the plaintiff." (*Burgess, supra,* 2 Cal.4th 1064, 1072.) "Bystander" claims are typically based on breach of a duty owed to the public in general (*Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 884 [2 Cal.Rptr.2d 79, 820 P.2d 181]), whereas a right to recover for emotional distress as a "direct victim" arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship

[2] The Court of Appeal recognized that the respective showings of the parties on the summary judgment motion did not address the questions whether defendant's pharmacist knew the prescription was for an infant, whether the infant suffered serious injury, or whether plaintiff Robert Huggins, as well as Mrs. Huggins, administered the erroneous prescription. In plaintiffs' request for leave to amend the complaint, as part of their response to the motion for summary judgment, plaintiffs acknowledged that the complaint lacked any allegation of who had administered the medication, and may also have omitted other material facts. Since the trial court granted summary judgment without granting or denying leave to amend, the Court of Appeal's reversal would, if left standing, entitle plaintiffs to renew their request for leave to amend on remand. (See *Stalnaker* v. *Boeing Co.* (1986) 186 Cal.App.3d 1291, 1302 [231 Cal.Rptr. 323].)

[3] The Court of Appeal rejected plaintiffs' bystander theory for failure to meet the prerequisite that the plaintiff be "present at the scene of the injury-producing event at the time it occurs and [be] then aware that it is causing injury to the victim" (*Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 668 [257 Cal.Rptr. 865, 771 P.2d 814]). Even though plaintiffs, during administration of the medication, were concerned about Kodee's sleepiness and suspected the medication as a cause, they were not aware that the dosage was excessive as a result of pharmaceutical negligence. After they learned that fact, they immediately ceased following defendant pharmacy's directions, but by then the impact of defendant's negligence upon Kodee had become complete. The appellate court cited three post-*Thing* decisions denying recovery to patients' close relatives who observed medical malpractice but failed to show a contemporaneous awareness that the victim was being injured by the negligent conduct: *Breazeal* v. *Henry Mayo Newhall Memorial Hospital* (1991) 234 Cal.App.3d 1329, 1342 [286 Cal.Rptr. 207]; *Golstein* v. *Superior Court* (1990) 223 Cal.App.3d 1415 [273 Cal.Rptr. 270]; and *Wright* v. *City of Los Angeles* (1990) 219 Cal.App.3d 318, 349-350 [268 Cal.Rptr. 309].

with the plaintiff (*Burgess, supra,* 2 Cal.4th at pp. 1073-1074; *Marlene F., supra,* 48 Cal.3d at p. 590).

■■■■ The Court of Appeal concluded that a pharmacist automatically assumes a duty of care toward a patient's closely related caregivers simply by filling a prescription with actual or constructive knowledge that the patient is an infant or is otherwise helpless. That conclusion comports neither with California case law nor with sound public policy.

The "direct victim" label stems from *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] (*Molien*). There, "we found that a hospital and a doctor owed a duty directly to the husband of a patient, who had been diagnosed incorrectly by the doctor as having syphilis and had been told to so advise her husband in order that he could receive testing and, if necessary, treatment. (*Molien, supra,* 27 Cal.3d at p. 923.) We reasoned that the risk of harm to the husband was reasonably foreseeable and that the 'alleged tortious conduct of the defendant was directed to him as well as to his wife.' (*Id.* at pp. 922-923.) Under such circumstances we deemed the husband to be a 'direct victim' and found the criteria for bystander recovery not to be controlling. (*Id.* at p. 923.)" (*Burgess, supra,* 2 Cal.4th 1064, 1073-1074.)

Since *Molien* was decided, we have made clear that despite its broad references to foreseeability, the opinion should be read as basing the defendant doctor's direct-victim liability only upon his assumption of a direct duty toward the husband. (*Burgess, supra,* 2 Cal.4th at p. 1074; see *Thing* v. *La Chusa, supra,* 48 Cal.3d 644, 679 (dis. opn. of Mosk, J.).) That duty did not arise simply because the doctor's misdiagnosis "necessarily involved him directly" as Justice Mosk's dissent suggests, but because the doctor directed his patient, the wife, to advise the plaintiff husband of the diagnosis.

That limitation on direct-victim liability under *Molien* was confirmed in *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1], where plaintiffs alleged emotional distress from observing the defendant juvenile authorities' wrongful refusal to provide or allow direly needed medical care for plaintiffs' son, who subsequently died from the consequent neglect. Though upholding plaintiffs' claim for recovery as bystanders, we rejected their claim as direct victims under *Molien.* We explained that "[i]n *Molien* defendant's misdiagnosis was, by its very nature[,] directed at both the wife and the husband," whereas "the defendants' negligence in the instant case was directed primarily at the decedent, with Mrs. Ochoa looking on as a helpless bystander. . . . While she was a foreseeable plaintiff to whom the defendants owed a duty of care . . . , the duty owed was owed to her as a percipient witness, not as a direct victim of negligence." (*Id.* at pp. 172-173.)

More recently we have allowed recovery for parental emotional distress from professional mistreatment of a child by health care providers who were concurrently treating the parents as patients. In *Marlene F.*, *supra*, 48 Cal.3d 583, the defendant psychotherapist was treating both the plaintiff mothers and their sons for intrafamily difficulties. We held that because the plaintiffs were themselves the defendant's patients, they could recover damages for emotional distress caused by the defendant's sexual abuse of the sons. Similarly, in *Burgess*, *supra*, 4 Cal.4th 1064, we held that a mother could recover damages for emotional distress as the direct victim of medical malpractice that inflicted permanent brain injury upon her child through deprivation of oxygen during childbirth. Again, liability was based on the defendant's physician-patient relationship with, and consequent duty of care toward, the mother as well as the child.

When the plaintiff is not the defendant's patient, however, "[c]ourts have not extended the *Molien* direct-victim cause of action to emotional distress which is derived solely from a reaction to another's injury" (*Martinez* v. *County of Los Angeles* (1986) 186 Cal.App.3d 884, 890 [231 Cal.Rptr. 96]). Thus, in *Burgess*, *supra*, although we upheld the mother's claim as a direct victim of the defendant's negligence that resulted in childbirth injuries to her son, we noted "that the physician-patient relationship critical to a mother's cause of action is almost always absent in a father's claim. It, therefore, appears that a father must meet the criteria [for bystander recovery] set forth in *Thing* [v. *La Chusa*], *supra*, 48 Cal.3d 644, if he is to state a viable claim." (2 Cal.4th at p. 1078, fn. 8.)

That principle was applied in *Schwarz* v. *Regents of University of California* (1990) 226 Cal.App.3d 149 [276 Cal.Rptr. 470], where a father was denied recovery for emotional distress as the alleged direct victim of a psychotherapist whom the father had retained to treat his son and who facilitated and concealed the mother's removal of the son to London, England. The Court of Appeal held that only the son was the therapist's patient, even though the plaintiff father had participated in counselling sessions with the therapist in an effort to improve the son's relations with the parents. (*Id.* at pp. 161-163.) The court also held that "the simple existence of a contract between a parent and a medical caregiver to provide medical treatment for a child is not in itself sufficient to impose on the caregiver a duty of care owed to the parent." (*Id.* at p. 168.)

It was only because the parents in *Burgess*, *supra*, 2 Cal.4th 1064, and *Marlene F.*, *supra*, 48 Cal.3d 583, qualified as the *patients* of the defendant caregivers that they could recover for emotional distress as the defendants' direct victims. To put it another way, the duty assumed by the defendant

physician included provision of care to the plaintiffs themselves. (See *Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370, 397-398 [11 Cal.Rptr. 51, 834 P.2d 745]; *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342-344 [134 Cal.Rptr. 375, 556 P.2d 737]; *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358].) Here, the end and aim of the prescription dispensed by defendant was to provide medical treatment for plaintiffs' infant son, Kodee. He, not plaintiffs, was the only patient being served by the transaction.

There is no material distinction between the professional duties of pharmacists and the duties of other health care providers that allows the parent of a child patient for whom a prescription is negligently filled to recover from the pharmacist as a direct victim. The Legislature has declared the practice of pharmacy to be "a dynamic patient-oriented health service." (Bus. & Prof. Code, § 4046, subd. (b).) ▮ The pharmacist must not only select, measure, and label the prescribed medication in accordance with the doctor's orders but also must be alert to errors or problems and bring them to the doctor's attention. Pharmacists also spend substantial amounts of time advising patients about the proper use of a prescribed drug and its possible side effects or interaction with other medications. (See *Murphy* v. *E. R. Squibb & Sons, Inc.* (1985) 40 Cal.3d 672, 686, 687, 695-697 [221 Cal.Rptr. 447, 710 P.2d 247]; Bus. & Prof. Code, § 4047.5 [labeling requirements]; Cal. Code Regs, tit. 16, former § 1707.2 [duty to consult with patient].)

▮ Nothing in those duties imposes any legal responsibility upon pharmacists for the emotional well-being of the patient's parents, even if the pharmacist knows the patient is an infant and that the parents will be administering the medication. Recent amendments to the regulations, added after defendant filled the prescription for Kodee, provide that the pharmacist must provide oral consultation about the prescription drug to "[the] patient *or the patient's agent*" (Cal. Code Regs., tit. 16, § 1707.2; italics added). The obvious purpose of providing for consultation with a patient's agent has nothing to do with the agent's personal welfare; the purpose is simply to assure that the pharmacist's advice is put to good use for the benefit of the patient even in situations in which the patient would be unable to understand the advice.

Plaintiffs seek to differentiate their claims from those of other parents who have contracted for an erring health care provider's services on the ground that the medical care for which plaintiffs contracted (i.e., the filling of a prescription) necessarily involved their personal participation. As the Court of Appeal put it, "[t]heir injuries are not merely derivative of Kodee's injuries but flow from their role as participants in his treatment." Plaintiffs

were distressed not merely by observation of the injury but by their own roles as "the unwitting agent[s] of destruction."

The same comments would apply, however, to practically all outpatient care of an infant. A pediatrician typically prescribes routines of diet, hygiene, medication, etc., all of which must be administered by the parent or other home caregiver. Even in the doctor's office, the parent may be asked to physically restrain a child who is to receive a "shot" from the doctor or nurse.

If a child is seriously injured by erroneous medical treatment caused by professional negligence, the parent is practically certain to suffer correspondingly serious emotional distress. But even if it were deemed reasonably foreseeable to a pediatrician, or a pharmacist, that a parent's realization of unwitting participation in the child's injury would by itself be a source of significant emotional distress from guilt, anxiety, or otherwise, that foreseeability would not warrant our establishing a new right of recovery for intangible injury. (See *Thing* v. *La Chusa, supra,* 48 Cal.3d 644, 666-667; *Bily* v. *Arthur Young & Co., supra,* 3 Cal.4th 370, 398-399.)

The duty that the Court of Appeal would impose upon pharmacists would inevitably enlarge the potential liabilities of practically all providers of medical goods and services obtained by parents solely for the treatment of their children, or by other caregivers solely for the treatment of dependent family members. All those providers, unlike the providers of care to competent adult patients, would be exposed to new claims of emotional distress allegedly incurred in *administering* the prescribed medication or treatment to the patient. That expansion of potential liability not only would increase medical malpractice insurance costs but also would tend to "inject undesirable self-protective reservations" impairing the provision of optimal care to the patient. (See *Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, 344.)

Because plaintiffs were not the patients for whom defendant dispensed the prescribed medication, they cannot recover as direct victims of defendant's negligence. The trial court did not err in granting summary judgment for defendant.

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Panelli, J., Arabian, J., and George, J., concurred.

**MOSK, J.,** Dissenting.—In this claim of negligent infliction of emotional distress, the issue in dispute is whether a pharmacy owes parents a duty of

care when it fills a prescription for their two-month-old infant. "Damages for severe emotional distress . . . are recoverable in a negligence action when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." (*Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 590 [257 Cal.Rptr. 98, 770 P.2d 278].)

I agree with the Court of Appeal that the parents in this case can properly establish that the pharmacy owed them a duty of care, and that the trial court erred in granting summary judgment in favor of the defendants.

A pharmacist has a statutory duty to correctly label the bottle in which medicine is dispensed. Business and Professions Code section 4047.5 prohibits a pharmacist from dispensing any prescription except in a container correctly labeled with, among other items, the directions for use of the drug.[1]

The pharmacy in the present case directed the parents to give their two-month-old infant five times the proper dose of prescribed medicine. No one would dispute that if a pharmacist dispensed medicine to an adult in a container that incorrectly directed a dangerous dose of the drug be taken, the adult could recover from the pharmacist for negligent infliction of emotional distress. When the drug is prescribed for a two-month-old infant who can neither read nor administer the drug, the duty to instruct on the use of the drug does not simply disappear. Section 4075.5 still requires that the pharmacist correctly label the drug with directions for use. The only rational purpose of the requirement in such circumstances is to instruct the parent in the proper use of the drug. Thus there is a statutory duty to the parents to provide accurate instructions.

The pharmacy not only had a statutory duty to provide accurate directions for the use of the medicine, but there was also a practical, necessary relationship between the pharmacy and the parents. The case is comparable to *Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064 [9 Cal.Rptr.2d 615, 831 P.2d 1197], in which we declared that an obstetrician owed a duty of care to a mother for the safe delivery of her child, so that injury to the child during delivery breached a duty of care to the mother. Because of the "realities of pregnancy and childbirth . . . any treatment for [the child] necessarily implicated [the mother's] participation. . . ." (*Id.*, at p. 1076.) Similarly, here, any prescription for the two-month-old child necessarily implicated the

---

[1]Section 4047.5 provides, in pertinent part: "A pharmacist shall not dispense any prescription except in a container correctly labeled with the following: [¶] . . . [¶] (b) The directions for the use of the drug."

parents' participation, as administration of the prescribed medicine obviously could not be performed by the infant.

This is not a case like *Schwartz* v. *Regents of University of California* (1990) 226 Cal.App.3d 149 [276 Cal.Rptr. 470], upon which the majority rely. There the provision of psychiatric services to a child did not establish a duty of care towards the child's father, because there it was not the case that the service to the child could not be accomplished but for the active involvement of the father. Here, on the other hand, the parents were necessary parties to the administration of the medical services offered by the pharmacy.

The majority suggest that only a patient of a medical caregiver can maintain a cause of action for negligent infliction of emotional distress caused by the negligence of the caregiver. (Maj. opn., *ante*, pp. 131-132.) However, *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] held that a man who was not the patient of a doctor could make out a claim for negligent infliction of emotional distress because the doctor advised the plaintiff's wife that she had venereal disease. The husband's well-being was in no way the "end and aim" of the doctor's relationship with the wife, but the husband, nonetheless, was considered the direct victim of the doctor's negligence in erroneously diagnosing venereal disease because the misdiagnosis necessarily involved him directly. I see the same direct impact on the parents of the infant who was injured by the negligence of the pharmacy in this case.

Because of the statutory duty imposed on pharmacists to label drugs correctly and give correct instructions for their use, and because of the practical relationship between the parties, a duty is established between the pharmacy and the parents.

The majority state policy reasons for denying recovery to the parents in this situation. They express typical, well-worn anxiety over expanding liability and increasing medical malpractice insurance costs. (Maj. opn., *ante*, at p. 133.) I fail to see how the imposition of liability here would be any novelty; a statutory duty to provide accurate instructions was breached and the persons to whom the instructions were directed seek compensation. They deserve a trial, not a summary denial.

Kennard, J., concurred.

**KENNARD, J.,** Dissenting.—When a pharmacy writes incorrect instructions on medication for an infant to be administered by the infant's parent,

and the parent administers the medication to the infant, thereby causing injury, is the parent a "direct victim" of the pharmacy's negligence, and thus able to recover damages for negligent infliction of emotional distress? The majority holds that the parent is not a direct victim.

For the reasons expressed by Justice Mosk, I disagree. I write separately to explain why, in my view, the physical and emotional realities of a parent's administration of prescription medicine to an infant warrant recovery, and why the majority's policy reasons for denying recovery are not persuasive.

## BACKGROUND

Plaintiffs Barbie and Robert Huggins are the parents of Kodee Huggins. When Kodee was two months old he developed an ear infection, for which a doctor prescribed a drug. The prescription was filled by defendant Longs Drug Stores California, Inc. The pharmacist incorrectly indicated on the instructions that the medication should be administered at five times the prescribed dosage. Thereafter, Barbie Huggins, and possibly Robert Huggins as well, gave Kodee the medication in the dosage indicated by the pharmacist, allegedly causing severe injury. The injury to Kodee, however, did not manifest itself when the parents administered the medication, but only later, when the infant was in his grandmother's care and the parents were not present. The parents claimed that the knowledge of their administration of the medicine to the child caused them severe emotional distress.

Plaintiffs' complaint alleged causes of action for negligent infliction of emotional distress on both "bystander" and "direct victim" theories. The child is not a party to this action; his claim was resolved by arbitration. Defendant moved for summary judgment or, alternatively, summary adjudication of issues. The trial court granted the motion, and plaintiffs appealed. In a published opinion, the Court of Appeal reversed, holding that although the parents could not recover on the bystander theory, they should be allowed to proceed to trial on the direct victim theory. Defendant successfully sought review in this court. The bystander theory is not before us.

## DISCUSSION

In "direct victim" cases, damages "are sought as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'" (*Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064, 1073 [9 Cal.Rptr.2d 615, 831 P.2d 1197].) In essence, the defendant in this case claims that its duty of care was owed solely to the infant, and that it owed no

duty of care to the parent who would administer the medication for which it provided instructions.

The scope of a pharmacist's duties includes not just providing prescribed medication, but also providing a correct label containing "directions for the use of the drug." (Bus. & Prof. Code, § 4047.5, subd. (b).) At the time the prescription in this case was filled, regulations of the State Board of Pharmacy required that a pharmacist provide "his or her patient with consultation upon request, and whenever the pharmacist deems it warranted. . . ." (Cal. Code Regs., tit. 16, former § 1707.1.) Under new regulations of the State Board of Pharmacy, a pharmacist must provide oral consultation about the prescription to "[the] patient or the patient's agent" whenever a prescription drug is initially dispensed. (Cal. Code Regs., tit. 16, § 1707.2, subd. (b); see *Murphy* v. *E. R. Squibb & Sons, Inc.* (1985) 40 Cal.3d 672, 678 [221 Cal.Rptr. 447, 710 P.2d 247] [refusing to hold pharmacists liable under the strict product liability doctrine in part because "the pharmacist is engaged in a hybrid enterprise, combining the performance of services and the sale of prescription drugs"].)

Inevitably, when the patient is an infant, the pharmacist's duty to provide appropriate directions for use of the prescribed medication will be met through communication with someone other than the infant patient. In most such cases, including this one, that agent of the patient is one of the infant's parents. Thus, it is clear that when the patient is an infant, the pharmacist must, in the performance of his or her professional duty, provide the parent with directions to be followed in administering the medication to the infant.

In this context, a recent decision from this court dealing with a medical professional's duty in providing care to an infant and a parent, *Burgess* v. *Superior Court*, *supra*, 2 Cal.4th 1064, is instructive. There, this court held that an obstetrician owed a duty not only to the fetus the obstetrician delivered but also to the mother. This holding was based on the "physical and emotional realities" of the situation. (2 Cal.4th at p. 1076.)

Similarly, here too the "physical and emotional realities" of the situation must be considered. When a child is seriously injured by a pharmacy's negligence, the parent is likely to suffer emotional distress regardless of whether the parent administered the medication. But there is an *additional* quantum of suffering and guilt when a parent administers the medication that severely injures the child—the parent has personally participated in poisoning the child, and must suffer the emotional consequences of that participation. It is this additional injury that renders the parent a direct victim.

As the Court of Appeal noted, it would take no stretch of the imagination to conclude that a parent who "administers a lethal dose of medication to a

child would suffer extreme guilt and emotional distress upon becoming aware contemporaneously or after the fact that he or she was the purveyor of injury or death." The Court of Appeal went on to ask: "If grief and emotional distress are foreseeable where one witnesses the infliction of injury or death to his or her child as in *Dillon* v. *Legg* [1968] 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], could we say those feelings would be any less foreseeable or real when the plaintiff is the actual unwitting agent of destruction? Of course not." In other words, as the plaintiffs' brief puts it, the parents felt "anxiety and worry and anger because of their injury of their son. They know they poisoned their son."

Significantly, the majority does not deny that "a parent's realization of unwitting participation in the child's injury would by itself be a source of significant emotional distress from guilt . . . ." (Maj. opn., *ante*, at p. 133.) In the majority's view, however, there are two policy considerations that justify its denial of recovery. The first is that imposition of liability would "increase medical malpractice insurance costs . . . ." (Maj. opn., *ante*, at p. 133.) This assertion is unpersuasive.

It is unlikely that there would be a dramatic increase in the cost of pharmaceutical malpractice insurance if this court were to recognize liability to parents in what is, realistically, a narrow class of cases in which parents cannot also recover as "bystanders" because they did not witness the child's actual suffering at the time they administered the medication. (See *Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 667-668 [257 Cal.Rptr. 865, 771 P.2d 814].) As the Court of Appeal noted, the conditions under which there may exist "direct victim" liability by pharmacists to parents are "self-limiting."

To bolster its argument of increased medical malpractice costs, the majority expands the issue in this case to include "practically all providers of medical goods and services obtained by parents solely for the treatment of their children, or by other caregivers solely for the treatment of dependent family members." (Maj. opn., *ante*, at p. 133.) But here the issue does not concern a wide spectrum of medical care providers; it concerns only pharmacists, who are under a professional and statutory obligation to provide accurate directions for the use of prescription medications. We are not called upon to decide the liability of "practically all providers of medical goods and services." Nor does this case involve "other caregivers"; it involves only parents. Any holding in this case can and should be limited to the factual scenario in which a pharmacist negligently provides incorrect instructions on medication for an infant to be administered by the infant's parent, and the parent administers the medication to the infant, thereby causing serious injury to the infant.

The second policy consideration that, according to the majority, justifies its denial of recovery is that a contrary holding would " 'inject undesirable self-protective reservations' impairing the provision of optimal care to the patient." (Maj. opn., *ante*, at p. 133.)

It is difficult to imagine just what "undesirable self-protective reservations" a pharmacist under a duty to provide accurate instructions for the use of medicines might have that would impair patient care as a result of allowing parents to recover in the circumstances of this case. Allowing parents to recover against pharmacists as direct victims when they have personally administered medication causing serious injury to their children would rationally tend to assure that the pharmacist's legal duty to consult with the patient or the patient's agent is *more*, not less, effectively fulfilled. In the case on which the majority relies, *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737], this court held that an attorney's liability for negligence did not extend to third parties who were represented by their own counsel and with whom the defendant attorney's client dealt at arm's length in a commercial transaction. The third parties in *Goodman* stood in a much different relationship to the provider of professional services than the parents in this case who, following a pharmacist's faulty professional directions, administered a dangerous overdose of medication to their own infant.

I would affirm the judgment of the Court of Appeal.

Mosk, J., concurred.