118 Cal.Rptr.2d 240 (2002)
97 Cal.App.4th 120
Irene ESS, Plaintiff and Appellant,
v.
ESKATON PROPERTIES, INC., et al., Defendants and Respondents.
No. C034357.
Court of Appeal, Third District.
March 27, 2002.
*242 Law Office of William F. Taylor, William Fayette Taylor, Berkeley; and Peter *243 G. Lomhoff, Oakland, for Plaintiff and Appellant.
Fred J. Hiestand, Sacramento, for Defendants and Respondents.
Paul N. Halvonik, Berkeley, for Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Respondents.
Fred L. Main for California Chamber of Commerce as Amicus Curiae on behalf of Defendants and Respondents.
*241 SCOTLAND, P.J.
Plaintiff Irene Ess[1] appeals from a judgment of dismissal entered after the trial court sustained a demurrer to her causes of action against the defendants, Eskaton Properties, Inc. and Thomas C. Wood.
By her complaint, plaintiff sought to recover for emotional distress that she suffered as the result of physical injuries to her sister while in defendants' skilled nursing facility. She alleges defendants knew of her close personal relationship with her sister and also knew that the primary reason why her sister was placed in defendants' nursing facility was to benefit plaintiff by providing her with a temporary respite from being her sister's caregiver. It follows, she argues, defendants assumed a relationship with, and a duty of care toward, plaintiff when they undertook the responsibility of providing care for her sister and, thus, plaintiff is a direct victim of defendants' negligence.
Defendants retort that the agreement to admit plaintiffs sister into their facility was with the sister only and did not create a relationship with, or assume a duty of care toward, plaintiff. To conclude otherwise, they argue, would be contrary to public policy because it would unduly expand the potential liability of care facilities with respect to services obtained by families for their aging or infirm relatives. Such expanded liability would come at great "social cost," they assert, because it would drive up the expense of providing such services, thereby threatening to make the services unavailable to those who no longer could afford them.
For reasons that follow, we agree with the trial court that, under the circumstances of this case, plaintiff cannot state a cause of action for her emotional distress. As we will explain, in accordance with California Supreme Court precedent, plaintiffs close familial relationship with her sister and the purpose of placing her sister in defendants' care are insufficient to support a direct victim cause of action for plaintiffs emotional distress. Accordingly, we shall affirm the judgment of dismissal.

FACTS
This litigation was resolved upon general demurrer. Thus, for purposes of review, we will provisionally accept as true all material facts alleged in the complaint. (Aragon-Haas v. Family Security Ins. Services, Inc. (1991) 231 Cal.App.3d 232, 239, 282 Cal.Rptr. 233.) But we do not accept as true plaintiffs conclusions of law. (Ibid.)
The operative pleading, upon which the trial court sustained a demurrer without leave to amend, was plaintiffs first amended complaint, which includes survival causes of action (Code Civ. Proc., § 377.20 et seq.) that are not at issue in this appeal.[2]
The causes of action involved in this appeal are those plaintiff brought as an individual in her own right. They are for *244 the negligent infliction of emotional distress and for the reckless infliction of emotional distress. In support of these causes of action, plaintiff makes the following allegations:
Eskaton Manzanita Manor is a skilled nursing facility operated by defendant Eskaton Properties, Inc. At all relevant times, defendant Thomas C. Wood was the administrator of Eskaton Manzanita Manor. In July 1997, plaintiffs sister was admitted to Eskaton Manzanita Manor for personal care on a temporary basis.[3] On August 27, 1997, an unknown intruder sexually assaulted plaintiffs sister with a foreign object, causing her to suffer personal injuries, for which she was hospitalized and underwent emergency surgery.
Plaintiff alleges she had a close personal relationship with her sister. For more than four years before the sexual assault, plaintiffs sister had lived with plaintiff after being diagnosed as suffering from Alzheimer's disease. Plaintiff provided care for her sister at all times until her placement at Eskaton Manzanita Manor. Plaintiffs sister was admitted to Eskaton Manzanita Manor in order to give plaintiff a temporary respite from caregiving duties. Before having her sister placed there, plaintiff met with defendant Wood to explain her relationship with and concern for her sister. Wood assured plaintiff that her sister would receive appropriate care and would be protected during her stay.
Plaintiff alleges that defendants failed to provide adequate care for her sister with the result that her sister developed a stage III/stage IV pressure ulcer on her left thigh. Plaintiff further alleges that defendants failed to manage, supervise, and control access to the premises with the result that an unknown intruder was able to sexually assault her sister with a foreign object. Plaintiff alleges that she suffered severe emotional distress as a result of the injuries to her sister. She seeks recovery for the negligent infliction of emotional distress and for the reckless infliction of emotional distress.

DISCUSSION

I
Negligent infliction of emotional distress is not an independent tort; it is the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply. (Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc. (1989) 48 Cal.3d 583, 588, 257 Cal. Rptr. 98, 770 P.2d 278.) Courts have long wrestled with the circumstances in which a plaintiff should be permitted to maintain an action for the negligent infliction of emotional distress when emotional distress is the only injury alleged. The primary means of resolving this question has been through the determination of the duty issue. (Ibid.) The duty issue is a question of law for the court rather than the jury to resolve. (Ibid.)
In a negligence action, duty is the expression of the sum total of the considerations of policy that lead the court to conclude whether a particular plaintiff may maintain a cause of action. (Dillon v. Legg (1968) 68 Cal.2d 728, 734, 69 Cal. Rptr. 72, 441 P.2d 912.) The major considerations include the foreseeability of harm to the plaintiff; the degree of certainty *245 that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct and the injury suffered; the moral blame attached to the defendant's conduct; the policy of preventing future harm; the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach; and the availability, cost, and prevalence of insurance for the risk involved. (Rowland v. Christian (1968) 69 Cal.2d 108, 113, 70 Cal.Rptr. 97, 443 P.2d 561.)
Foreseeability of harm is often the most significant consideration in the duty analysis. (Ballard v. Uribe (1986) 41 Cal.3d 564, 572-573, fn. 6, 224 Cal.Rptr. 664, 715 P.2d 624.) However, with respect to the negligent infliction of emotional distress, our Supreme Court has held that foreseeability of harm alone is not a useful guideline or meaningful restriction on the scope of the action. (Thing v. La Chusa. (1989) 48 Cal.3d 644, 663-664, 257 Cal. Rptr. 865, 771 P.2d 814; see also Burgess v. Superior Court (1992) 2 Cal.4th 1064, 1074, 9 Cal.Rptr.2d 615, 831 P.2d 1197.) While recovery for the negligent infliction of emotional distress is generally denied, it has been permitted in two types of situations, referred to as "bystander" and "direct victim" cases. (Burgess v. Superior Court, supra, 2 Cal.4th at p. 1072, 9 Cal.Rptr.2d 615, 831 P.2d 1197.)
Recovery may be permitted in a bystander case where the plaintiff is closely related to the victim of a physical injury, is present at the scene of the injury-causing event and is then aware that it is causing injury, and suffers emotional distress beyond that which would be anticipated in a disinterested witness. (Thing v. La Chusa, supra, 48 Cal.3d at p. 647, 257 Cal.Rptr. 865, 771 P.2d 814.) Because she was not present at the event that caused injury to her sister, plaintiff cannot pursue a bystander cause of action.
Direct victim cases involve the breach of a duty owed the plaintiff that was assumed by the defendant, imposed on the defendant as a matter of law, or arose out of a preexisting relationship between the two. (Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra, 48 Cal.3d at p. 590, 257 Cal.Rptr. 98, 770 P.2d 278; see also Huggins v. Longs Drug Stores California, Inc. (1993) 6 Cal.4th 124, 129-130, 24 Cal.Rptr.2d 587, 862 P.2d 148.)
Decisions of our Supreme Court upholding direct victim causes of action include Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (hereafter Molien), in which a doctor misdiagnosed a patient as having syphilis and advised her to tell her husband so he could be tested and treated if necessary. Since the doctor's negligence was expressly directed at the husband as well as the wife, the husband was permitted to pursue a claim for emotional distress. (Id. at pp. 922-923, 167 Cal.Rptr. 831, 616 P.2d 813.)[4] In Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra, 48 Cal.3d 583, 257 Cal.Rptr. 98, 770 P.2d 278, a psychotherapist treating mothers and their sons for intrafamily difficulties sexually abused the sons. The mothers were permitted to sue for emotional distress since they, as well as their sons, were patients. (Id. at p. 591, 257 Cal.Rptr. 98, 770 P.2d 278.) In Burgess v. Superior Court, supra, 2 Cal.4th 1064, 9 Cal.Rptr.2d *246 615, 831 P.2d 1197, the court held that a mother could sue for emotional distress caused by injuries to her child as a result of malpractice during childbirth since the mother, as well as the child, was a patient. (Id. at p. 1078, 9 Cal.Rptr.2d 615, 831 P.2d 1197.)
Decisions in which our Supreme Court has rejected a direct victim cause of action include Ochoa v. Superior Court (1985) 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (hereafter Ochoa), in which parents suffered emotional distress from juvenile authorities' wrongful refusal to provide or allow medical care to their son, who died from the neglect. (Id. at pp. 172-173, 216 Cal.Rptr. 661, 703 P.2d 1.)[5] In Huggins v. Longs Drug Stores California, Inc., supra, 6 Cal.4th 124, 24 Cal.Rptr.2d 587, 862 P.2d 148 (hereafter Huggins), a direct victim cause of action was rejected where, while filling a prescription for the plaintiffs' two-month-old son, defendant pharmacy negligently wrote directions for five times the dosage ordered by the doctor.
We find the decision in Huggins to be controlling here. In that case, plaintiff parents alleged they suffered emotional distress due to injuries suffered by their child when, due to a pharmacy's negligence, the parents administered medication at five times the proper dosage. The Court of Appeal upheld the parents' direct victim cause of action, reasoning that a pharmacy assumes a duty of care to a patient's closely related caregivers when it fills a prescription with actual or constructive knowledge that the patient is a child or otherwise helpless. (Huggins, supra, 6 Cal.4th at p. 130, 24 Cal.Rptr.2d 587, 862 P.2d 148.) The Supreme Court observed that the Court of Appeal's conclusion "comports neither with California case law nor with sound public policy." (Ibid.)
As the Supreme Court explained, to support a direct victim cause of action for emotional distress, the plaintiff must himself or herself be a patient of the defendant caregiver. (Huggins, supra, 6 Cal.4th at pp. 131-132, 24 Cal.Rptr.2d 587, 862 P.2d 148.) The parents' contractual relationship with the pharmacy, their personal participation in administering the medication, and their familial relationship with the dependent child were not sufficient to support a direct victim cause of action. (Id. at pp. 132-133, 24 Cal.Rptr.2d 587, 862 P.2d 148.)
The Supreme Court was aware that a parent will be practically certain to suffer emotional distress as a result of injury to a child through professional negligence, but found that to be insufficient to warrant establishing a new right of recovery for intangible injury. (Huggins, supra, 6 Cal.4th at p. 133, 24 Cal.Rptr.2d 587, 862 P.2d 148.) Policy factors, including increased insurance costs and undesirable self-protective reservations that would follow, counseled against the enlargement of potential liabilities of caregivers for intangible injury. (Ibid.)
In this case, plaintiff has alleged that she had a close familial relationship with her sister and had undertaken to care for her since the sister's diagnosis with Alzheimer's disease. However, when the sister became a resident of Eskaton Manzanita Manor, defendants undertook to provide care to the sister and not to plaintiff. Like the parents in Huggins, plaintiff would incidentally benefit from defendants' *247 provision of care to her dependent relative, but, as in Huggins, that is not sufficient to support a direct victim cause of action for emotional distress.
The decision in Jacoves v. United Merchandising Corp. (1992) 9 Cal.App.4th 88, 11 Cal.Rptr.2d 468, upon which plaintiff relies, is not to the contrary. The Jacoves's son committed suicide shortly after his release as a psychiatric patient by the defendant hospital. {Id. at pp. 98-99, 11 Cal.Rptr.2d 468.) In concluding the parents made a sufficient showing to withstand a motion for summary judgment, the Court of Appeal noted the parents had presented evidence to establish that they were themselves treated as patients through group therapy and weekly family sessions. (Id. at p. 110, 11 Cal.Rptr.2d 468.) Although plaintiff downplays this aspect of the decision, it was in fact pivotal. The Court of Appeal specifically declined to address the parents' contention that they were direct victims as intended beneficiaries of the admission contract because it was for the benefit of their parental interest and concerns and for their well-being. (Id. at p. 111, fn. 12, 11 Cal. Rptr.2d 468.) The court said its decision did not rest solely, or even necessarily, on the contract. (Ibid.) In view of the subsequent decision in Huggins, supra, 6 Cal.4th 124, 24 Cal.Rptr.2d 587, 862 P.2d 148, it is now settled that the plaintiffs status as a patient is essential to a cause of action in these circumstances.
In accordance with the ruling in, and reasoning of, Huggins, supra, 6 Cal.4th 124, 24 Cal.Rptr.2d 587, 862 P.2d 148, plaintiff cannot state a cause of action for the negligent infliction of emotional distress. (See also Shin v. Kong (2000) 80 Cal.App.4th 498, 510-511, 95 Cal.Rptr.2d 304; Aguirre-Alvarez v. Regents of University of California (1998) 67 Cal.App.4th 1058, 1068, 79 Cal.Rptr.2d 580; Klein v. Children's Hospital Medical Center (1996) 46 Cal.App.4th 889, 896-899, 54 Cal. Rptr.2d 34.)

II
Reckless infliction of emotional distress is an aspect of the tort of intentional infliction of emotional distress. This tort is entirely different from negligent infliction of emotional distress. (Christensen v. Superior Court (1991) 54 Cal.3d 868, 904, 2 Cal.Rptr.2d 79, 820 P.2d 181 (hereafter Christensen ).) The elements of the tort are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (Cervantez v. J.C. Penney Co. (1979) 24 Cal.3d 579, 593, 156 Cal.Rptr. 198, 595 P.2d 975.)
"Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (Cervantez v. J.C. Penney Co., supra, 24 Cal.3d at p. 593, 156 Cal.Rptr. 198, 595 P.2d 975.) "Generally, conduct will be found to be actionable where the `recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!''" (KOVR-TV, Inc. v. Superior Court (1995) 31 Cal.App.4th 1023, 1028, 37 Cal.Rptr.2d 431, quoting Rest.2d Torts, § 46, com. d.)
The fact that conduct might be termed outrageous is not itself sufficient. "The tort calls for intentional, or at least reckless conductconduct intended to inflict injury or engaged in with the realization that injury will result." (Davidson v. City of Westminster (1982) 32 Cal.3d 197, *248 210, 185 Cal.Rptr. 252, 649 P.2d 894.) The conduct must be of a nature that is especially calculated to cause mental distress of a very serious kind. (Ochoa, supra, 39 Cal.3d at p. 165, fn. 5, 216 Cal.Rptr. 661, 703 P.2d 1.)
Moreover, to support the cause of action, "[i]t is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." (Christensen, supra, 54 Cal.3d at p. 903, 2 Cal. Rptr.2d 79, 820 P.2d 181.) "The requirement that the defendant's conduct be directed primarily at the plaintiff is a factor which distinguishes intentional infliction of emotional distress from the negligent infliction of such injury." (Id. at p. 904, 2 Cal.Rptr.2d 79, 820 P.2d 181.) In circumstances in which a plaintiff seeks to recover for emotional distress suffered as the result of conduct directed primarily at another, recoveryto the extent it has been allowed at all"has been limited to `"the most extreme cases of violent attack, where there is some especial likelihood of fright or shock."'" (Id. at p. 905, 2 Cal. Rptr.2d 79, 820 P.2d 181, quoting Ochoa, supra, 39 Cal.3d at p. 165, fn. 5, 216 Cal. Rptr. 661, 703 P.2d 1.)
In Christensen, the Supreme Court noted that commentators had suggested recovery for reckless conduct usually requires that the plaintiff be present at the time of the conduct and be known by the defendant to be present. (Christensen, supra, 54 Cal.3d at pp. 905-906, 2 Cal. Rptr.2d 79, 820 P.2d 181.) The court agreed: "`The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant.' ... The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability his or her conduct will cause severe emotional distress to that plaintiff.... Where reckless disregard of the plaintiffs interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory...." (Ibid., citations and fn. omitted.)
Two of the limitations on the cause of action of which our Supreme Court has spoken are of particular relevance here. First, where the plaintiff seeks to recover for emotional distress as the result of injuries to another, the cause of action is limited to the most extreme cases of violent attack. (Christensen, supra, 54 Cal.3d at p. 905, 2 Cal.Rptr.2d 79, 820 P.2d 181.) Second, when the plaintiffs claim is based on alleged recklessness, it is generally, if not always, required that the plaintiff be present at the time the outrageous conduct occurred. (Id. at p. 906, 2 Cal.Rptr.2d 79, 820 P.2d 181.)
Plaintiff alleges her invalid sister was sexually assaulted with a foreign object, which is unquestionably a vile assault. But defendants did not assault plaintiffs sister; the attack was perpetrated by an unknown intruder. Plaintiff charges defendants with nonfeasance. She alleges that they failed to provide adequate security at the Eskaton Manzanita Manor. She further alleges that, in view of the disabilities of the residents of the facility, and defendants' knowledge of surrounding conditions and prior offenses in and around the facility, their nonfeasance can be termed reckless. However, defendants' nonfeasance was not directed primarily at plaintiff. It was not calculated to cause plaintiff emotional distress. And plaintiff *249 was not present at the time of the injury-causing event. Accordingly, plaintiff has not stated a cause of action for the reckless infliction of emotional distress.

DISPOSITION
The judgment is affirmed.
We concur: DAVIS, and NICHOLSON, JJ.
NOTES
[1] Plaintiff secured an order from the trial court permitting her to prosecute this action under a fictitious name.
[2] In the survival causes of action, plaintiff is pursuing her deceased sister's causes of action as her successor in interest. (Code Civ. Proc, § 377.30.)
[3] Defendants ask us to take judicial notice of the 1997 Eskaton Manzanita Manor resident admission agreement, which had to be submitted to the Department of Health Services. (Health & Saf.Code, § 1599.61.) We deny the request as there is no showing the agreement was before the trial court, through judicial notice or otherwise. (People v. Preslie (1977) 70 Cal.App.3d 486, 493, 138 Cal.Rptr. 828.)
[4] The decision in Molien included broad language suggesting a cause of action for emotional distress is limited only by the concept of foreseeability. Our Supreme Court has since said that to this extent the decision in Molien should not be relied upon and its discussion of duty is limited to its particular facts. (Burgess v. Superior Court, supra, 2 Cal.4th at p. 1074, 9 Cal.Rptr.2d 615, 831 P.2d 1197.)
[5] Although they could not pursue a direct victim claim, the parents in Ochoa, who were present, witnessed, and were aware of the injury causing event, were permitted to pursue a bystander cause of action. (Ochoa, supra, 39 Cal.3d at pp. 172-173, 216 Cal.Rptr. 661, 703 P.2d 1.)