Filed 10/5/21  Martin v. Sutter Valley Hospitals CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| KIMBERLY ANN MARTIN, | C091462 |
| Plaintiff and Appellant, | (Super. Ct. No. 18CVC10524) |
| v. | |
| SUTTER VALLEY HOSPITALS et al., | |
| Defendants and Respondents. | |

Plaintiff Kimberly Martin brought this action against defendant Sutter Valley Hospitals, doing business as Sutter Amador Hospital, after she was denied access to her 17-year-old son following a car accident.  The trial court granted summary judgment in favor of defendant on plaintiff's causes of action for intentional and negligent infliction

1

of emotional distress and child abduction.  This appeal followed.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

In the early morning hours of June 28, 2017, plaintiff's 17-year-old son, Dustin Martin (Dustin),[1] was involved in a car accident.  The car Dustin was driving struck a cow on a rural road in Amador County and he was taken to the Sutter Amador Hospital emergency room (ER) by ambulance.

Dustin suffered only a superficial cut on his chin and was not seriously injured, although his passenger was.  He was not given any medications and was lucid and alert at the ER.  He told an ER technician, who was a friend of plaintiff's and knew Dustin, that he had contacted his father about the accident but not his mother (i.e., plaintiff), explaining that he was living with his father and did not want to see or speak to plaintiff.  When Dustin's father arrived at the ER, he consented to Dustin's treatment.

After plaintiff arrived at the ER,[2] she was informed that Dustin was not seriously injured and that he did not want to see her.[3]  She called the police to assist her in obtaining access to Dustin but the responding officer was unable to assist her.  She eventually left the ER without seeing Dustin.

---

[1]  Because Dustin and his mother share the same last name, we refer to him by his first name to avoid any confusion.

[2]  According to plaintiff, she received a phone call from a "third party" who informed her that Dustin had been in an accident.  That person, however, had no knowledge of the nature and severity of Dustin's injuries, "although they were represented to be serious."

[3]  It is undisputed that, after plaintiff arrived at the ER, she was informed that Dustin was not seriously injured.  She claimed that a police officer told her this information; other evidence showed that a doctor had told her that Dustin was not seriously injured.

At the time of the accident, defendant had a written visitation policy which allowed all patients, including minors, to receive or decline visitors.  It is undisputed that defendant denied plaintiff access to Dustin solely based on his request.  It is also undisputed that Dustin and plaintiff were estranged and not speaking to each other at the time of the accident.  Several weeks earlier, they had been in a verbal and physical altercation.  Thereafter, Dustin stayed with his father and refused all attempts by plaintiff to communicate with him.

*Procedural Background*

In April 2018, plaintiff filed this action against defendant, alleging causes of action for intentional and negligent infliction of emotional distress and child abduction.  The claims were predicated on defendant's failure to provide plaintiff material information about Dustin's medical condition and refusal to allow her to visit with him.

In March 2019, defendant filed a motion for summary judgment.  In support of its motion, defendant submitted a declaration from Kathryn Biasotti, a registered nurse with a Master of Business in Healthcare Administration and over 23 years of experience as a corporate compliance officer and risk manager for hospitals.  Among other things, Biasotti opined that defendant's written visitation policy was appropriate and consistent with applicable privacy laws and regulations as well as the visitation policies of other hospitals.

In October 2019, the trial court granted defendant's motion for summary judgment.  In doing so, the court sustained several objections to plaintiff's declaration and overruled several objections to Biasotti's declaration,[4] including plaintiff's contention that portions of Biasotti's declaration should be excluded because this case did not present any issue on which expert testimony was proper.  The court stated:

---

[4]  Plaintiff did not object to Biasotti's declaration on the ground that she lacked the qualifications to render an expert opinion.

3

"Biasotti's expert opinion as to [defendant's] policies and whether they are appropriate, consistent with applicable privacy law and regulations is sufficiently beyond common experience and would assist the trier of fact.  Further, it is relevant to the first cause of action for intentional infliction of emotional distress as to whether [defendant] engaged in extreme or outrageous conduct."

Plaintiff timely appealed.

## DISCUSSION

### I

### *Standard of Review*

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.  [Citation.]  ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." '  [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."  (*Yanowitz v. L'Oreal USA*, *Inc.* (2005) 36 Cal.4th 1028, 1037.)

A defendant moving for summary judgment has the burden of showing that a cause of action has no merit by demonstrating one or more elements of the cause of action cannot be established or that a complete defense to that cause of action exists.  (Code Civ. Proc., §  437c, subd. (p)(2).)  If the defendant successfully meets this burden, the plaintiff then has the burden of setting forth specific facts showing the existence of one or more triable issues of material fact.  (*Ibid*.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the [plaintiff] . . . in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.)  The trial court shall grant the defendant's summary judgment motion if there is no triable issue as to any

4

material fact and that party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)

Although we independently assess the granting of a motion for summary judgment, our review is governed by fundamental principles of appellate procedure, including that the judgment or order of the lower court is presumed correct, and thus, error must be affirmatively shown.  Under this principle, the appellant bears the burden of establishing error on appeal, even though the respondent had the burden of proving its right to summary judgment before the trial court.  (*Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 645.)

II

*Intentional Infliction of Emotional Distress*

Plaintiff contends the trial court erred in granting summary judgment because the evidence supported a finding that defendant's conduct was extreme and outrageous such that it permitted recovery under an intentional infliction of emotional distress theory.  We disagree.

A cause of action for intentional infliction of emotional distress requires proof of: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the severe emotional distress.  (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050 (*Hughes*).)

A defendant's conduct is considered to be outrageous if "it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation]  And the defendant's conduct must be ' " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' " (*Hughes, supra*, 46 Cal.4th at pp. 1050-1051; see also *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001.)

5

"Liability for intentional infliction of emotional distress ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." ' " (*Hughes, supra*, 46 Cal.4th at p. 1051.) " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1007.)  "It is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1265.)

We agree with the trial court that defendant's conduct in this case was not extreme and outrageous such that it even arguably supported a cause of action for intentional infliction of emotional distress.  The record discloses that, after plaintiff arrived at the ER, she was informed that Dustin was not seriously injured.  The record is clear that plaintiff was denied access to Dustin based solely on his clearly expressed preference, and that defendant's conduct in doing so was in conformity with its written visitation policy.  That policy states, in relevant part:  "All hospitalized patients have the right to have visitors of their choice during their stay, unless visitation interferes with the well-being, rights or safety of others, or is not medically indicated in the patient's care.  Patients may receive visits from visitors of their choice.  Patients also have the right to withdraw or deny consent to visitation any time."  The uncontradicted expert evidence showed that defendant's visitation policy was appropriate and consistent with applicable privacy laws and regulations as well as the visitation policies of other hospitals.  Plaintiff has not directed us to any law, regulation, or evidence (e.g., expert testimony or declaration) supporting the conclusion that defendant was *required* to provide

6

information to plaintiff about Dustin's medical condition or allow her to visit with Dustin against his wishes. Thus, the trial court properly granted summary judgment. Defendant's conduct could not be reasonably regarded as so extreme and outrageous to permit recovery. It certainly did not exceed all bounds of conduct usually tolerated in a civilized community; indeed, there is no evidence that defendant's conduct was inappropriate in any way given the circumstances.

We reject plaintiff's contention that the trial court improperly relied on expert evidence in granting summary judgment in favor of defendant. " 'The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment.' " (*Fernandez v. Alexander* (2019) 31 Cal.App.5th 770, 779.) Expert opinion evidence is admissible when it is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) The trier of fact need not be wholly ignorant of the subject matter of the expert's opinion in order to justify its admission; expert opinion may be admitted whenever it would assist the trier of fact, and will be excluded only when it would add nothing at all to the trier of fact's common fund of information, i.e., when " ' " 'the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness.' " ' " (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1169.) Expert opinion evidence may concern an ultimate issue of fact, but is inadmissible if it concerns a question of law. (*Id*. at pp. 1178-1179; see *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 532, fn. 3 [expert opinion that amounts to a legal conclusion is improper].) Evidence expressing an expert's belief as to how the case should be decided is also impermissible. (*Burton v. Sanner* (2012) 207 Cal.App.4th 12, 20-21; see *WRI Opportunity Loans*, at p. 532, fn. 3 [" ' "manner in which the law should apply to particular facts is a legal question and is not subject to expert opinion" ' "].) We review a trial court's ruling on the admission of expert evidence for abuse of discretion. (*Sargon*

7

*Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) A court abuses its discretion if its ruling is " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Ibid*.)

Plaintiff has not shown an abuse of discretion. Contrary to plaintiff's contention, Biasotti's declaration contained relevant evidence that was "sufficiently beyond common experience" it would assist the trial court in ruling on defendant's motion for summary judgment, and Biasotti did not offer an impermissible legal opinion on the question of whether defendant engaged in extreme and outrageous conduct. Instead, after describing her education and extensive experience in healthcare administration, which included knowledge about the privacy rights of patients under federal and state laws and regulations, Biasotti opined that defendant's visitation policy was appropriate and consistent with applicable privacy laws and regulations as well as the visitation policies of other hospitals.[5] Biasotti also opined that, under the circumstances of this case, it was appropriate for defendant to deny plaintiff access to Dustin. We see no evidentiary error. The propriety of defendant's visitation policy and defendant's conduct in conformity therewith was a key issue in this case. Biasotti's declaration was relevant and admissible evidence on this issue.

---

[5] Biasotti obtained a Bachelor of Science in nursing and a Master of Business in Healthcare Administration. From 1988 to 2017, she worked for Barton Healthcare System in South Lake Tahoe. Between 1994 and 2017, her primary responsibilities and oversight included risk, quality management, and system corporate compliance. At the time she executed her declaration, she was the owner and operator of a consulting business, which involved working with healthcare clients on setting policies for compliance with applicable laws and regulations. She was also working as a risk manager for a hospital. She explained that, based on her experience, she was knowledgeable about state and federal laws and regulations governing hospitals on a variety of topics, including the privacy rights of patients with respect to receiving and declining visitors.

## III

### *Negligent Infliction of Emotional Distress*

Plaintiff contends the trial court erred in granting summary judgment because the evidence supported a finding that defendant owed her a duty of care to permit recovery under a negligent infliction of emotional distress theory. She argues defendant owed her a duty not to interfere with the parent-child relationship. We disagree.

"Negligent infliction of emotional distress is not an independent tort; it is the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." (*Ess v. Eskaton Properties, Inc*. (2002) 97 Cal.App.4th 120, 126 (*Ess*); see also *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072 (*Burgess*); *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc*. (1989) 48 Cal.3d 583, 588.) Damages for negligent infliction of emotional distress are recoverable even in the absence of physical injury or impact to the plaintiff. (*Burgess*, at pp. 1074, 1079.)

Although plaintiff does not expressly allege a direct victim theory of liability, it is clear from the allegations in the complaint that she is relying on such a theory. Where a plaintiff relies on a direct victim theory of negligent infliction of emotional distress liability, damages may only be recovered when they result from "a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.' " (See *Burgess, supra,* 2 Cal.4th at p. 1073; *id*. at pp. 1071-1073 [explaining difference between direct victim and bystander theories of negligent infliction of emotional distress liability].)[6] Absent a duty

---

[6] "The distinction between the 'bystander' and 'direct victim' cases is found in the source of the duty owed by the defendant to the plaintiff." (*Burgess, supra*, 2 Cal.4th at p. 1072.) While direct victim cases are typically premised on a preexisting relationship between the parties [(e.g., physician-patient)], bystander cases are premised on the defendant's violation of a duty not to negligently cause emotional distress to plaintiffs who observe conduct that causes harm to another. (*Id.* at pp. 1072-1074.)

of care, there can be no breach and no negligence. (Cf. *Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1267.) Whether a defendant owes a duty of care is a question of law for the court rather than the jury to resolve. (*Burgess, supra,* 2 Cal.4th at p. 1072; *Ess*, *supra*, 97 Cal.App.4th at p. 126.) " 'Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability.' " (*Burgess*, at p. 1072.)

We conclude the trial court properly granted summary judgment. Plaintiff has not directed us to, and we are not aware of, any legal authority supporting the conclusion that defendant owed her a duty of care. Plaintiff insists that defendant owed her a duty by virtue of the fact she was the mother of a minor patient. We are not persuaded. Each of the cases relied on by plaintiff is distinguishable, and therefore inapposite. (See, e.g., *Burgess, supra*, 2 Cal.4th at p. 1076 [mother permitted to recover emotional distress damages under a direct victim theory after the negligent delivery of her child because mother established a physician-patient relationship with defendant physician for medical care, which was directed not only to her, but also to her fetus].) None of the cases cited by plaintiff holds or even suggests that defendant owed plaintiff a duty under the facts of this case. Indeed, our Supreme Court has held that the mere existence of a contractual relationship between a parent and a health care provider for the care of a child does not impose a duty on the health care provider to the parent. (*Huggins v. Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 126-127, 131-133 [parent of child patient may not recover damages as a direct victim of negligence of pharmacist or other health care provider]; see also *Ess, supra*, 97 Cal.App.4th at p. 128 ["to support a direct victim cause of action for emotional distress, the plaintiff must himself or herself be a patient of the defendant caregiver"]; *Aguirre-Alvarez v. Regents of University of California* (1998) 67 Cal.App.4th 1058, 1067-1069 [similar]; *Klein v. Children's Hospital Medical Center*

(1996) 46 Cal.App.4th 889, 895-899 [similar].)[7] In short, because plaintiff did not have a physician-patient relationship with defendant and has not otherwise shown the existence of a duty owed to her by defendant, her negligent infliction of emotional distress claim fails as a matter of law.[8]

We also reject plaintiff's undeveloped negligence per se argument, which attempts to establish a duty of care imposed by statute based on defendant's alleged violation of Civil Code section 49.[9] This argument fails because, as we next explain, the trial court properly determined that plaintiff's cause of action predicated on a violation of that

---

[7] Citing *Newton v. Kaiser Foundation Hospitals* (1986) 184 Cal.App.3d 386, plaintiff argues that a duty of care may be imposed on a hospital by virtue of the contract between it and the parents of a minor patient. In *Newton*, a panel of this court concluded that *both* parents could recover emotional distress damages arising out of injuries sustained by their child during childbirth. (*Id*. at pp. 387, 392-393.) However, *Newton*, predates our Supreme Court's decision in *Huggins*. And plaintiff makes no attempt to explain how *Newton* supports a finding of a duty here in light of *Huggins* and the circumstances of this case, which are clearly distinguishable from the facts in *Newton*.

[8] In her reply brief, plaintiff asserts for the first time that the trial court erred in sustaining an objection to the portion of her declaration in which she asserted that defendant provided her no material information about the nature or severity of Dustin's injuries. According to plaintiff, the excluded evidence was "sufficient to allow [her] negligence cause of action to proceed to trial." We need not consider this argument because plaintiff provides no justification for failing to raise it earlier. (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3 ["absent justification for failing to present an argument earlier, we will not consider an issue raised for the first time in a reply brief"].) But even if we were to overlook this deficiency and determine that the trial court erred in excluding the evidence, we see no basis for reversal. As we have explained, the evidence does not demonstrate that defendant owed plaintiff a duty of care.

[9] Under the negligence per se doctrine, negligence is presumed if (1) the defendant violated a statute, (2) the violation proximately caused injury to the plaintiff, (3) the injury resulted from an occurrence of the nature which the statute was designed to prevent, and (4) the plaintiff was one of the class of persons for whose protection the statute was adopted. (*Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 221 Cal.App.4th 102, 124.)

statute fails as a matter of law. Plaintiff cites no other statutory basis establishing a duty of care.

IV

*Child Abduction*

Plaintiff contends the trial court erred in concluding that her child abduction cause of action fails as a matter of law. We disagree.

Civil Code section 49 prohibits the "abduction or enticement of a child from a parent, or from a guardian entitled to its custody." (Civ. Code, § 49, subd. (a).) "It has long been established that the unlawful taking or withholding of a minor child from the custody of the parent or guardian entitled to such custody constitutes an actionable tort. One who is not entitled to custody has no privilege to interfere with the legal custody of the child." (*Surina v. Lucey* (1985) 168 Cal.App.3d 539, 542; see also *Rosefield v. Rosefield* (1963) 221 Cal.App.2d 431, 433-436.) The statute "serves to deter child-stealing by feuding parents and similar antisocial conduct." (*Surina,* at p. 543.) It was "crafted by the Legislature to protect the *parents'* right to custody and control of their minor child. A violation of that right gives rise to an action by the parents for damages from a person who by force abducts a child from its home or who, with knowledge that the parents have not consented, induces the child to leave home, or who, with knowledge that the child is away from home against the will of the parents, imprisons the child or induces it not to return home." (*Id*. at pp. 542-543.) "Put simply, a third party may not interfere with the parents' right to custody, even if motivated by kindness or affection toward the child." (*Id*. at p. 543.)

We conclude the trial court properly granted summary judgment. Plaintiff has not cited any legal authority supporting the conclusion that defendant abducted Dustin within the meaning of Civil Code section 49. Plaintiff concedes that Dustin was "not wrongfully" brought to the ER. She argues that Dustin was abducted when defendant wrongfully withheld him from her, i.e., refused to allow her to visit with him. However,

12

there is no evidence suggesting that defendant imprisoned Dustin or induced or otherwise influenced him not to visit with plaintiff. The evidence showed that Dustin was estranged from plaintiff and living with his father at the time of the accident, his father consented to his medical treatment, and Dustin declined to communicate with plaintiff at the ER. On this record, plaintiff's claim for child abduction fails as a matter of law. (See *Robbins v. Hamburger Home for Girls* (1995) 32 Cal.App.4th 671, 675, 680-682 [shelter for abused and troubled teenage girls did not interfere with plaintiffs' parental rights because their teenage daughter voluntarily went to shelter and was not induced to stay; she was free to leave or contact her parents].)

Nor are we persuaded by plaintiff's novel contention that reversal is required because, regardless of whether she has asserted a viable cause of action under Civil Code section 49, defendant's unprivileged interference with the parent-child relationship is independently actionable. Plaintiff has not offered any reasoned legal analysis demonstrating that reversal is required on this basis.

## DISPOSITION

The judgment is affirmed. Defendant shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

                                                  /s/

                                            Duarte, J.

We concur:

/s/
Robie, Acting P. J.

/s/
Mauro, J.