Filed 4/12/23  Smith v. HashiCorp CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| RYAN SMITH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>HASHICORP, INC.,<br><br>    Defendant and Respondent. | A165389<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-20-587383) |

Plaintiff Ryan Smith appeals a summary judgment entered on his complaint against his former employer, defendant HashiCorp, Inc. (HashiCorp), alleging, among other things, three causes of action for wrongful termination and retaliation.[1] He contends the trial court erred in concluding that there could be no causation as a matter of law because the decision to terminate his employment was made before he engaged in the "protected activity" alleged in the complaint. He argues: (1) to reach this conclusion, the court construed the amended complaint's allegations concerning "protected activity" too narrowly; (2) the court erroneously declined to consider

---

[1] Smith's complaint also alleged claims for failure to pay wages when due, breach of oral contract, breach of good faith and fair dealing, and promissory estoppel. On appeal, he challenges only the court's summary adjudication of the three causes of action for wrongful termination and retaliation.

undisputed facts submitted in opposition to the motion that show he engaged in other *unpled* protected activity *before* the decision to terminate was made (such that those causes of actions were not temporally barred); and (3) the court erred by refusing to grant his request for leave to amend his complaint to add the unpled theories of liability.

We find no error in the court's summary adjudication of Smith's first two causes of action, which as pleaded were plainly limited to protected activity that occurred after the decision to terminate his employment was made. Nor did the court err in refusing to consider evidence going only to unpled theories of liability. We agree with Smith, however, that his third cause of action alleges retaliation based on his assertion of a bona fide right to be paid and that triable issues of fact preclude summary adjudication of this cause of action. Accordingly, we reverse the judgment and remand with instructions to deny the motion with respect to the third cause of action. On remand, the court retains discretion to rule on a renewed motion by Smith for leave to amend the complaint.

## Background

Smith's first amended complaint alleges that he began working for HashiCorp in March 2019. His direct supervisor was the regional vice-president of sales, Jason Flashberg. Between March and August 2019, Smith was working to secure substantial purchase agreements with three of his assigned clients: Venmo/PayPal,[2] Oracle Corporation, and VMware, Inc. In August 2019, as these agreements were approaching completion, Flashberg advised Smith that he would need to give one of the above accounts to a

---

[2] Although Smith was working on separate purchase agreements with Venmo and PayPal, HashiCorp treated the companies as a single account/client because of their shared ownership.

coworker. On August 16, Smith "reluctantly" surrendered the Venmo/PayPal account to his coworker. Smith was told he could split the commission on the Venmo purchase agreement 50/50 with his coworker if he saw the purchase agreement through to completion. As to the PayPal account, Smith would not receive any share of the commission.

On August 19, Smith was informed that the Oracle sale would not proceed and, on November 6, Smith learned that the VMware sale would not close, either. In the meantime, Smith completed the Venmo sale and his coworker completed the PayPal sale.

On November 7, 2019, Smith requested a meeting with Flashberg and Flashberg's supervisor, the vice-president of North America sales, "to discuss what had occurred and the fact that he had received almost no commission from the three accounts and purchase agreements he had been working on prior to being forced to surrender the Venmo/PayPal accounts to [his coworker]. Smith also wanted to discuss the possibility of retaining both the Venmo and PayPal accounts as his Oracle and VMware deals fell through."

At that meeting, which took place on November 11, Smith learned that the decision to surrender an account to his coworker had been made by Flashberg, not Flashberg's supervisor as Smith had been told. Smith did not know why he had been required to surrender one of his accounts but, based on information and belief, suspected it was because the coworker to whom he transferred the account, who was under-performing, had a "close personal relationship" with Flashberg.

On November 20, Smith received a letter from defendant's human resources department notifying him that he was being placed on a performance improvement plan. Smith was "blindsided" by the letter because he had closed the last business quarter "at 425% of his quota attainment, had

earned 159% of his total yearly quota, and was No. 1 in sales for the western region."

On January 15, 2020, Smith requested a meeting with the human resources department to discuss his concerns about the decision to place him on a performance improvement plan. At the meeting on January 17, Smith "expressed his frustrations and concerns with respect to how he had been and was being treated, as detailed above."

Smith received a letter that afternoon terminating his employment.

Smith's first cause of action asserts his employment was terminated in violation of Labor Code section 98.6 for making a bona fide complaint for unpaid wages. He alleges that defendant "abruptly terminated [him] on January 17, 2020 after [Smith] complained to the human resources department about how he had and was being treated by his superiors at HashiCorp, including the fact that he lost significant commissions because he had been improperly forced to surrender his Venmo and PayPal accounts to [his coworker]. [Smith] additionally complained that HashiCorp was retaliating against him by putting him on a 'Performance Plan' . . . . [Smith] further complained to Human Resources that his direct superior, Mr. Flashberg, had lied to him about why he was being forced to surrender these accounts, falsely representing that the directive had been issued by [the vice-president of North America sales]."

Smith's second cause of action alleges his employment was terminated in violation of Labor Code section 1102.5, which prohibits an employer from retaliating against and/or terminating an employee for disclosing information about a superior which the employee reasonably believes constitutes a violation of company policy. Smith alleges that he was terminated after he complained to the human resources department as set forth above.

4

Finally, the third cause of action alleges HashiCorp violated the California public policy, incorporated into Labor Code sections 200–300, prohibiting retaliation against an employee who asserts a right to be paid by "forcing him to surrender his valuable accounts, for which Mr. Smith would have been owed commissions, ignoring [Smith's] requests about these commissions and to reinstate the Venmo and PayPal accounts, placing Smith on a bogus 'Performance Plan', and the actions in terminating Mr. Smith in retaliation for him asserting his legal rights."[3]

HashiCorp moved for summary judgment or, alternatively, summary adjudication of the individual causes of action. As to the three retaliation causes of action, HashiCorp asserted, inter alia, that the decision to terminate Smith's employment was made before his meeting with the human resources department on January 17. Because the "decision to terminate Smith's employment cannot be retaliation for a complaint that Smith had not yet made" and the complaint does not allege that he engaged "in any protected conduct *before* HashiCorp made the decision to terminate him," there was no triable issue as to causation.

In support of its motion, HashiCorp submitted the following undisputed evidence that the decision to terminate Smith was made on January 7: On October 2, 2019, Flashberg sent Smith an email expressing his concern that "[a]fter 5 months on the job," Smith had "limited . . . knowledge" of HashiCorp's basic products. Flashberg also indicated that he was "surprised at how unprepared" Smith was for meetings and suggested they work "on a plan to improve [his] product knowledge." On November 11, Flashberg sent

---

[3] The common law cause of action for wrongful discharge in violation of public policy, first recognized by the California Supreme Court in *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, is often referred to as a *Tameny* claim.

5

another email to Smith regarding his "activity, his outbound pipeline generation, his understanding of the company's products, and his relationship with leadership." On November 20, Smith was placed on a performance improvement plan that included benchmarks for three of the four categories marked for improvement in the November 11 email (activity, pipeline generation, product knowledge) and well as the added category of business reporting. On December 19, Flashberg wrote to human resources stating: "I continue to not be impressed with [Smith's] skills, attention to detail, etc. as a sales person. Culturally he's not a perfect fit. . . . I am not sure I see him here for the long-term." On January 6, 2020, Flashberg sent an email to Smith expressing concerns about the manner in which Smith had handled an account and noting his insubordination. The email states: "This is not the first time you've sent content/documents out w/o approval and certainly not the first time you've embarrassed/challenged me in front of the team. We will need to discuss in greater detail during our 1:1." Also on January 6, Flashberg emailed the vice-president of North America sales and the human resources department recommending that Smith's employment be terminated by the end of the month. The email asserts, "As of now, [Smith] is not meeting the expectations of his performance plan . . . and there are already grounds for termination." The decision was made the next day to terminate Smith's employment.

In opposition, Smith asserted that he engaged in protected activity on at least four separate occasions before HashiCorp decided to terminate his employment: (1) when he made a "bona fide objection, beginning in late July 2019, to Mr. Flashberg's unjustified and patently improper demand that he give one of his valuable accounts to [his coworker] and that she receive commission without doing any of the work"; (2) when "he questioned

6

Flashberg's patently inappropriate decision" to arrange and pay for his team to visit a strip club; (3) "when he again brought up the PayPal/Venmo account transfer issue and resulting loss of commissions" with Mr. Flashberg during a break in a November 2019 meeting; and (4) "when he discovered and brought to HashiCorp's attention a significant error in paying a 'spiff', or bonus, to employees companywide on the 'Consul' product."

Smith included the following largely undisputed facts in his separate statement: On July 28, 2019, Smith sent an email to Flashberg requesting that they meet with Flashberg's supervisor to discuss his having to surrender one of his accounts. Flashberg did not set up the meeting but forwarded the email to his supervisor. Flashberg's supervisor indicated in response that they would want to bring the human resources department up to speed "to make sure we have our backs covered." In his deposition, the supervisor explained that because Smith was "highly frustrated" with the "account transitions" it was important to make human resources aware of the situation. The supervisor assumed Smith was upset because he would be losing the commissions on the account.

In August 2019, following a dinner that was part of a quarterly business review meeting, Flashberg arranged for the transportation of some of the group to a strip club. At the time, Smith suggested to Flashberg that this was not a good idea, especially considering that one (female) member of the group was very intoxicated. Flashberg, who was also intoxicated, indicated that he did not appreciate Smith questioning his authority.[4]

---

[4] HashiCorp did not dispute plaintiff's evidence regarding the strip club incident, but objected on the ground that it was irrelevant and offered on an unpled theory of liability.

On August 20, Smith sent an email to Flashberg and Flashberg's superior advising them that the Oracle deal had fallen through and requesting a call to address this issue and "me having to move one of my deals," which he had already complained about "a few weeks ago." Rather than scheduling a call, Flashberg responded by email that it had been Smith's choice about which account to surrender.

On November 7, Smith participated in a team meeting in which some participants attended by Zoom and others, including Smith and Flashberg, attended in person. At a break, Smith complained to Flashberg about "being forced to give up the PayPal/Venmo accounts and the fact that it cost him significant commissions, while giving another employee commissions that [Smith] had earned." Unbeknownst to Smith, Flashberg had "neglected to turn off the Zoom audio" during the break and Smith's complaints were overheard by various team members. Flashberg was upset with Smith for challenging him in front of the sales team and felt Smith was being insubordinate.

Finally, on November 8, Smith "brought several errors in his compensation to the attention of . . . HashiCorp, which errors were in favor of HashiCorp," including "the payment of a 'spiff', or bonus, for the sale of a HashiCorp product called 'Consul', which error had been made companywide with respect to all sales of Consul." Flashberg admitted that they "botched the payment of the spiff" and Smith was instructed to keep the mistake confidential.[5]

Prior to the hearing on HashiCorp's motion, the court issued a tentative decision indicating the court's intent to grant the motion. The tentative

---

[5] Again, HashiCorp did not dispute the fact but objected on the ground that it was irrelevant and improperly offered on an unpled theory.

decision reads in relevant part: "The amended complaint alleges that plaintiff engaged in protected activity by complaining to Human Resources on January 17, 2020, regarding plaintiff's placement on a 'Performance Plan' and HashiCorp's mistreatment by reassigning plaintiff's accounts to [his coworker] and his subsequent loss of commissions. . . . Reading the amended complaint liberally . . . , no other protected activity is alleged. Therefore, plaintiff's reference in his opposition to complaining about attending a work event at the Gold Club (strip club), HashiCorp's error regarding the 'spiff' bonus, etc. are irrelevant. The undisputed evidence demonstrates that HashiCorp made the decision to terminate plaintiff on January 7, 2022. . . . Given the time proximity, plaintiff cannot establish a causal nexus between the protected activity and adverse employment action." (Bold omitted.)

At the hearing, Smith argued that the complaint alleged retaliation based on protected activity occurring prior to January 7. The court disagreed. Smith also argued that the court had discretion to consider the additional evidence included in his separate statement (set forth above) because HashiCorp had not objected to the evidence. The court declined to consider the additional evidence noting that it "can't reasonably resolve issues if people are allowed to go beyond their complaint later on without amending." Smith's counsel then requested leave to amend, which the court denied.

HashiCorp's motion was granted on April 1, 2022, and a judgment entered in HashiCorp's favor on April 14. Smith timely filed a notice of appeal.

**Discussion**

"Summary judgment is appropriate 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] The defendant

9

bears the initial burden of showing that the plaintiff cannot establish one or more elements of the cause of action, or that there is an affirmative defense to it. [Citations.] If the defendant makes one of the required showings, the burden shifts to the plaintiff to establish a triable issue of material fact." (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 443.) We review the trial court's decision granting a motion for summary judgment de novo. (*Ibid.*)

"The pleadings play a key role in a summary judgment motion. ' "The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues" ' and to frame 'the outer measure of materiality in a summary judgment proceeding.' [Citation.] The function of the affidavits or declarations is to disclose whether there is any triable issue of fact put in issue by the pleadings. [Citation.] 'Accordingly, the burden of a defendant moving for summary judgment only requires that he or she negate the theories of liability as alleged in the complaint; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings.' [Citation.] 'In assessing whether the issues raised by plaintiff in opposing summary judgment are encompassed by the controlling pleading, we generally construe the pleading broadly [citation]; but the pleading must allege the essential facts " ' "with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of [the] cause of action." ' " ' " (*White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 354.)

Smith's first three causes of action allege retaliation in violation of the Labor Code and California public policy. All three causes of action have similar requirements. To establish a prima facie case under each, Smith must show (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) a causal link between the two.

10

(*St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 314.) The scope of "protected activity" is defined by the statute under which the plaintiff relies. (*Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 592 ["An employee engages in activity protected by [section 1102.5] when the employee discloses ' "reasonably based suspicions" of illegal activity.' "]; *Garcia-Brower v. Premier Automotive Imports of CA, LLC* (2020) 55 Cal.App.5th 961, 972 ["Section 98.6 prohibits an employer from retaliating against an applicant or employee because the applicant or employee exercised a right afforded him or her under the Labor Code."].) An adverse employment action is one that "materially affects the terms, conditions, or privileges of employment, rather than simply that the employee has been subjected to an adverse action or treatment that reasonably would deter an employee from engaging in the protected activity." (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386.) With respect to the causal connection, the employee is not required to show that retaliation was the " 'but for' cause of the employment decision" but must show that retaliation was at least a "substantial motivating factor" for the decision. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 230, 232.)

California has adopted the federal burden shifting analysis enunciated in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802–805 for the trial of claims of retaliatory termination. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) "[T]he *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of [retaliation]. This step is designed to eliminate at the outset the most patently meritless claims." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354.) "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action.

11

[Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz, supra,* at p. 1042.)

This shifting burden of proof is modified when a defendant employer moves for summary judgment. (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 309.) " ' " 'If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment *unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing*. In short, by applying *McDonnell Douglas's* shifting burdens of production in the context of a motion for summary judgment, "the judge . . . determine[s] whether the litigants have created an issue of fact to be decided by the jury." ' " ' " (*Ibid.*)

As set forth above, the trial court granted summary adjudication of these causes of action because Smith could not establish a prima facie case of retaliation because there was no triable issue that the only protected activity alleged, Smith's complaint to the human resources department, occurred *after* the only adverse employment action alleged, the termination of Smith's employment. Thus, the undisputed evidence established that there was no causal link between the two.

Smith contends the trial court read the allegations of his complaint too narrowly, ignoring "other allegations of 'protected activity' that could reasonably be interpreted to have led to HashiCorp's retaliation." He argues that the complaint fairly alleges that he "began complaining about how he was being mistreated as early as August 2019, when he was instructed to

give up one of his accounts, and certainly by [the November meeting] and was immediately placed on a Performance Plan, an obvious stepping stone to [his] wrongful termination." Alternatively, he argues that the court abused its discretion by refusing to consider undisputed facts submitted in opposition to the motion that, he asserts, establishes his participation in other unpled protected activity before the decision to terminate was made and by refusing to grant him leave to amend his complaint based on this assertedly newly discovered evidence.

### 1. *The First and Second Causes of Action*[6]

The first two causes of action both allege that HashiCorp "*abruptly* terminated Mr. Smith on January 17, 2020 after [he] complained to the human resources department about how he had and was being treated by his superiors." (Italics added.) The first cause of action alleges that HashiCorp's termination of Smith "was in violation of California Labor Code section 98.6 and public policy as all of Mr. Smith's complaints to human resources were protected activities under California law." The second cause of action alleges that HashiCorp's termination of Smith "was in violation of California Labor Code section 1102.5, the 'whistleblower' statute, as the termination was in direct response to Mr. Smith's complaints and disclosure of Mr. Flashberg's improper conduct." Both causes of action allege Smith's termination "abruptly" followed his January 17, 2020 complaint, and neither identifies any other protected activity as a cause. Contrary to Smith's argument, even liberally construed, neither encompasses retaliation claims based on protected activity other than his January 2020 complaints to the human

---

[6] Although the parties address the court's ruling on the three causes of action collectively, significant differences in the pleading require individual analysis.

resources department. Accordingly, the trial court correctly determined that the undisputed facts precluded any causal connection between the termination of his employment and his complaints to the human resources department.

### 2. *The Third Cause of Action*

Smith's third cause of action alleges: "At all relevant times herein, the public policy in California was and is to prohibit all forms of retaliatory conduct by employers and supervisors against an employee who asserts his or her rights to be paid. This well-established public policy is set forth in California Labor Code sections 200–300. These statutes specifically declare that California has a public policy prohibiting retaliation by employers against employees asserting their rights under California's Labor Code. . . . [¶] . . . Plaintiff believes and thereon alleges that defendant HashiCorp's acts of forcing him to surrender his valuable accounts, for which Mr. Smith would have been owed commissions, *ignoring plaintiff's requests about these commissions and to reinstate the Venmo and PayPal accounts*, placing plaintiff on a bogus 'Performance Plan', and the actions in terminating Mr. Smith in retaliation for him asserting his legal rights constitute illegal acts of . . . retaliation in violation of the public policy of the State of California." (Italics added.)

Unlike the prior two causes of action, the third cause of action pleads facts sufficient to put HashiCorp on notice that it was based at least in part on his objections to commissions he lost as a result of beings forced to surrender the PayPal/Venmo account.[7] The complaint details the work Smith performed on the account between May and August before he "reluctantly

---

[7] Indeed, defendant's motion for summary judgment addressed this claim separately from the prior two causes of action.

14

surrendered" or was "forced" to surrender his PayPal/Venmo account in August 2019. The complaint sets forth his understanding of how much commission he was losing in the transfer—all of the PayPal commission and half of the Venmo commission, and his motivations for requesting the November 11 meeting—"to discuss what had occurred" and "to discuss the possibility of retaining both the Venmo and PayPal accounts." Although the complaint contains limited details regarding what occurred at the November meeting, the third cause of action expressly alleges HashiCorp "ignored" Smith's "requests" to reinstate the accounts. Given the requirement that we construe the pleading broadly, this cause of action must be read as alleging Smith's participation in protected activity other than just his January 2020 complaint to human resources. Accordingly, the trial court erred in how it construed the complaint with respect to this cause of action.

HashiCorp contends the court's error was not prejudicial because even if the allegations of the complaint are construed more broadly, summary adjudication of this cause of action was proper because Smith's "questioning and complaining about being 'forced to surrender' one of his valuable accounts" does not constitute protected activity. HashiCorp argues: "As to the change in accounts, Smith cites no law establishing that complaining about a change in work assignments is protected conduct under any theory . . . . Although Smith keeps insisting that HashiCorp had no right to reassign his accounts, and that doing so breached his contract, he lost those claims and has chosen not to appeal them. As the trial court found, the governing contract also expressly allows HashiCorp to reassign accounts and split commissions." Whether HashiCorp had the contractual right to transfer Smith's accounts and require him to split the commissions is not determinative of this issue. An employee may assert a claim for retaliation in

violation of public policy based on a request for compensation if he has a bona fide belief that he has a right to be paid, even if it ultimately turns out that request was wrong and that no compensation is owed. (See *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1148 [employer's discharge of employee "in order to avoid paying him the commissions, vacation pay, and other amounts he had earned, . . . violated a fundamental public policy of this state"]; § 98.6, subd. (a) [making it unlawful to discharge an employee "because the employee . . . has filed a bona fide complaint or claim" related to any rights under the jurisdiction of the labor commissioner]; *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 87 [employee asserting retaliation claim under section 1102.5 "need not prove an actual violation of law; it suffices if the employer fired him for reporting his 'reasonably based suspicions' of illegal activity"].)

In moving for summary judgment, HashiCorp argued that Smith "did not assert any 'right to be paid' additional PayPal/Venmo commissions before management decided to terminate his employment." HashiCorp suggested that at most, Smith's evidence established that he complained about "losing" an account and therefore potentially "losing" commissions but not that he had a right to be paid any then-owed commission. HashiCorp noted that Smith "admitted at deposition that, prior to his termination, he never complained to any manager that he had a contractual right to additional commissions on the Venmo opportunity or that transferring the PayPal/Venmo account violated the law or his contract."

HashiCorp's characterization of Smith's deposition testimony is somewhat misleading. When asked if, prior to his termination, he ever told "any manager at HashiCorp that [he] had a contractual right to get paid for the Venmo commissions and they were breaking your contract," Smith

16

responded, "I don't think so" and "I'm not sure." At the same time, however, he also claimed that he believed he was entitled to commissions on the PayPal and Venmo deals because "he negotiated the contract" and he repeatedly told Flashberg that transferring the account was not fair. Smith's undisputed facts, set forth more fully above, establish that he repeatedly complained about being forced to surrender his valuable accounts and specifically that he complained that it was unfair that he was being required to complete the purchase agreement for the Venmo account but forfeit 50 percent of the commission. It was also undisputed that the agreement used in the Pay Pal account, for which he received no commission, was the same agreement he had negotiated and secured for the Venmo transactions. Although not overwhelming, keeping in mind that we must "liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party" (*Yanowitz v. L'Oreal USA, Inc., supra,* 36 Cal.4th at p. 1037), this evidence is sufficient to raise a triable issue as to whether Smith asserted a bona fide right to be paid a commission for the work he performed on the PayPal and Venmo accounts prior to HashiCorp's decision to terminate his employment.

In the trial court, HashiCorp argued that even assuming Smith could establish a prima facie showing of retaliation, the undisputed facts establish that it had legitimate, nondiscriminatory reasons for terminating Smith's employment and Smith cannot show that those reasons were pretextual. HashiCorp has not briefed this argument on appeal. Instead, it suggests Smith forfeited the issue by failing "to present a complete analysis of the summary judgment motion" and requests permission to submit supplemental briefing on this issue "in the unlikely event" we disagree with the ground relied upon by the trial court. We disagree that Smith forfeited any argument

17

on appeal. The trial court's failure "to adopt grounds for summary judgment or summary adjudication urged by the respondent does not constitute an error from an appellant's point of view. The appellant therefore need not address them in its opening brief (though it may do so)." (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 380, fn. 13.) It was incumbent on HashiCorp, however, to brief all issues it deemed necessary to support its judgment. Arguably, HashiCorp forfeited any grounds for affirmance not briefed on appeal. In any event, given that the issues were fully briefed in the trial court and are contained in the record on appeal, we briefly address and reject HashiCorp's remaining ground for summary adjudication of this cause of action. No supplemental briefing is required. (See Code Civ. Proc., § 437c, subd. (m)(2) [supplemental briefs are required "[b]efore a reviewing court *affirms* an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court"].)

We agree that HashiCorp's undisputed facts suffice to establish a non-retaliatory reason for the termination of Smith's employment. Flashberg's emails to Smith in October and November detail Flashberg's concerns about Smith's product knowledge and his lack of preparation for meetings. The performance improvement plan instituted in November reiterates these concerns. Finally, Flashberg's emails to the human resources department in December and early January, reassert Flashberg's concerns with Smith's "account management skills."

The question, then, is whether Smith's undisputed facts demonstrate triable issues as to pretext. "In demonstrating that an employer's proffered nondiscriminatory reason is false or pretextual, ' "[an employee] cannot simply show that the employer's decision was wrong or mistaken, since the

factual dispute at issue is whether [retaliatory] animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. . . . Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' . . . and hence infer 'that the employer did not act for the [asserted] non-[retaliatory] reasons.' " ' " (*Sandell v. Taylor-Listug, Inc., supra,* 188 Cal.App.4th at p. 314.)

Smith submitted evidence, undisputed by HashiCorp, disclosing weaknesses in the proffered legitimate reasons for his termination and suggesting an alternative, retaliatory motive for the termination of his employment. First, quantitatively, Smith was performing well above company expectations. Despite not closing the Oracle and VMware agreements, he had closed other agreements and, as of the close of the third quarter, he was the number one salesperson in the Western region. With regard to the performance deficiencies described in his performance improvement plan, Smith offered evidence that Flashberg and others were aware prior to his termination that at least one ground was based on a technical error, not a performance deficiency, but they continued to rely on his asserted lack of compliance with the improvement plan as a ground for terminating his employment. Smith's coworker to whom his account was transferred testified at deposition that, contrary to Flashberg's assertion, Smith's behavior was neither unprofessional nor insubordinate. Smith's undisputed evidence also established that Flashberg provided a false explanation for the transfer of his account and acknowledged that he was frustrated and upset with Smith's "outburst" and threats to go to Flashberg's

19

superiors "for resolution" on the account transfer situation, which he (unlike at least one of his colleagues) perceived as insubordinate and disrespectful. Flashberg's final email to Smith on January 6, expresses this frustration, noting, "This is . . . not the first time you've embarrassed/challenged me in front of the team." Combined, Smith's evidence raises a triable issue as to whether retaliation was a substantial motivating factor in the decision to terminate his employment.

Accordingly, the trial court erred in summarily adjudicating the third cause of action.

### 3. Evidence in Support of Unpled Theories of Liability

Smith contends the trial court abused its discretion when it declined to consider his unpled theories of liability, including that his employment was terminated in retaliation for complaints he allegedly made regarding the strip club visit and HashiCorp's miscalculation of the bonus on the Consul product. Although Smith characterizes this evidence as undisputed and suggests that no objection was made to its admission, the record clearly establishes that HashiCorp objected to the evidence as irrelevant as it only supported unpled theories of liability. The court did not abuse its discretion in refusing to consider this evidence. In *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258, the court explained, "If a plaintiff wishes to expand the issues presented, it is incumbent on the plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself. [Citation.] To allow a party to expand its pleadings by way of opposition papers creates, as it would here, an unwieldy process."

*4. Leave to Amend*

Smith contends the court erred by denying his oral request, at the hearing, for leave to amend to expand the scope of his retaliation claims. He cites *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654 for the general rule that a party wanting the trial court to consider a previously unpled issue in connection with a motion for summary judgment, "may request leave to amend" and "[s]uch requests are routinely and liberally granted." (*Id.* at pp. 1663–1664.) The general rule discussed in *Bostrom* applies, however, when the motion for summary judgment challenges the legal sufficiency of the complaint. (*Id.* at p. 1663 ["[I]f summary judgment is granted on the ground that the complaint is legally insufficient, but it appears from the materials submitted in opposition to the motion that the plaintiff could state a cause of action, the trial court should give the plaintiff an opportunity to amend the complaint before entry of judgment."]; see also *Wood v. Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1120 ["When a motion for summary judgment is in effect a motion for judgment on the pleadings, it is better practice to grant the motion with leave to amend . . . ."].) HashiCorp's motion for summary adjudication was not based on the sufficiency of the complaint, but rather on the inability of Smith to prove causation. "Defendant[] filed a perfectly ordinary motion for summary judgment, premised on the *factual* negation, by extrinsic proofs, of the central allegation of the complaint . . . . This was not a facial challenge to the complaint, but a classic 'speaking motion,' i.e., one resting on evidence outside the pleadings." (*Dang v. Smith* (2010) 190 Cal.App.4th 646, 664–665

21

[rejecting argument that defendant's motion was "in effect one for judgment *on the pleadings*" so that the court was obliged to grant leave to amend].)[8]

In any event, the court in *Bostrom* acknowledged that the determination is grounded in the trial court's discretion and subject to arguments regarding prejudice by the defendant. (*Bostrom v. County of San Bernardino, supra,* 35 Cal.App.4th at p. 1664, fn. 5 ["Given the trial court's discretion in ruling on a motion for leave to amend, plus the fact that the Bostroms had waited until virtually the eve of trial before unveiling their new theories, we express no opinion as to whether such a motion for leave to amend would have had to be granted."].) HashiCorp argues that the court reasonably declined to grant Smith leave to amend given his failure to file a proper motion and the untimeliness of his request. On the record before us, we find no abuse of discretion in the denial of leave to amend. We note, however, that given the reversal of the summary adjudication of third cause of action, dictum in *Bostrum* suggests the trial court may retain discretion on remand to rule on any renewed motion by Smith for leave to amend the complaint. (See *Huggins v. Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 129, fn. 2 [reversal of order granting summary judgment would "entitle plaintiffs to renew their request for leave to amend on remand"]; *Hartnett v. Crosier* (2012) 205 Cal.App.4th 685, 695 [following reversal of summary judgment, if plaintiff "wishes to allege any new legal theories on remand, he should formally seek leave to amend his complaint from the trial

---

[8] The additional authorities cited by Smith are also distinguishable, as they implicate an exception allowing a defendant, moving for summary judgment, to raise an unpled affirmative defense in the absence of a showing of prejudice. (*Cruey v. Gannett Co.* (1998) 64 Cal.App.4th 356, 367; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 75.) Plaintiff was not moving for summary judgment.

court, so the trial court may consider the merits of the matter in the first instance"].)

## Disposition

The judgment is reversed and the matter remanded with instructions to deny HashiCorp's motion for summary adjudication of the third cause of action. The order summarily adjudicating the remaining causes of actions is affirmed. Smith shall recover his costs on appeal.

WHITMAN, J.*

WE CONCUR:

BROWN, Acting P. J.
GOLDMAN, J.

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.